UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MICHELLE LOPEZ and JOSEPH GIUFFRE, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>NEW YORK COMMUNITY BANCORP, INC., NEW YORK COMMUNITY BANK, and NEW YORK COMMERCIAL BANK,<br><br>Defendants. | No. 20 CV 2741 (GRB) (ST) |

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION AND COURT-AUTHORIZED NOTICE**

---

LITTLER MENDELSON, P.C.
Timothy S. Anderson
1100 Superior Avenue, 20th Floor
Cleveland, Ohio 44114
(216) 696.7600

Gary Moy
900 Third Avenue, 8th Floor
New York, New York 10022
(212) 583.9600

*Attorneys for Defendants*

TABLE OF CONTENTS

PAGE

I.   PRELIMINARY STATEMENT ................................................................... 1

II.   STATEMENT OF RELEVANT FACTS ................................................... 3

    A.   New York Community Bancorp, Inc. and its Subsidiaries ................................. 3

    B.   Plaintiffs' FLSA Allegations ........................................................ 4

III.   CONDITIONAL CERTIFICATION OF PLAINTIFFS' PROPOSED
    COLLECTIVE SHOULD BE DENIED ................................................... 5

    A.   Conditional Certification Standard ................................................ 5

    B.   Plaintiffs Failed to Demonstrate the Existence of a Common Unlawful
       Policy .......................................................................... 6

        1.   Compensation For Branch Opening Procedures ....................... 7

        2.   Interrupted Meal Periods ................................................ 11

        3.   Compensation For Branch Closing Procedures ....................... 13

        4.   Plaintiffs Fail to Establish that NYCB Subjects ABMs and BOCs
           to a Common Policy that Violates the Law ........................... 14

IV.   IF CERTIFICATION OF SOME NARROWER COLLECIVE IS GRANTED,
    THE PROPOSED NOTICES, NOTICE PERIOD, CONSENT FORMS AND
    DISTRIBUTION PLAN MUST BE REVISED ....................................... 17

    A.   The Notice Period Should Be Three Years From The Date Of The Court's
       Conditional Certification Order, Not The Filing Of The Complaint ................. 17

    B.   Distribution of Notice by Text Messaging and Through a Website, as Well
       as Use of a "Reminder" Notice, is Unnecessary and Improper ..................... 18

    C.   The Collective Definition Must be Refined and Clarified ............................ 21

    D.   The Notices Fail to Inform Potential Opt-In Plaintiffs of Their Litigation
       Obligations ................................................................... 22

    E.   The Notices Should Include Defense Counsel's Contact Information ............... 22

    F.   The Notices and Consent Forms Must Inform Potential Opt-In Plaintiffs
       That They Have A Right To Appear Pro Se or Through Separate Counsel ....... 23

V.   CONCLUSION .............................................................................. 24

i.

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ahmed v. T.J. Maxx Corp.*,
  No. 10 CV 3609 (ADS) (ETB), 2013 WL 2649544 (E.D.N.Y. June 8, 2013)......................16

*Anjum v. J.C. Penny Co.*,
  No. 13 CV 460 (RJD), 2015 WL 3603973 (E.D.N.Y. June 5, 2015)....................................15

*Avila v. Northort Car Wash*,
  774 F. Supp. 2d 450 (E.D.N.Y. 2011) ..................................................................................22

*Benavides v. Serenity Spa NY*,
  166 F. Supp. 3d 474 (S.D.N.Y. 2016)......................................................................................6

*Bittencourt v. Ferrara Bakery & Café*,
  310 F.R.D. 106 (S.D.N.Y. 2015) ..............................................................................................6

*Brandenburg v. Cousin Vinny's Pizza, LLC*,
  2017 U.S. Dist. LEXIS 129955 (S.D. Ohio Aug. 14, 2017)...................................................19

*Brickey v. Dolgencorp., Inc.*,
  272 F.R.D. 344 (W.D.N.Y.2011)...........................................................................................16

*Cano v. Four M Food Corp.*,
  No. 08 CV 3005, 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009) ..............................................23

*Castillo v. Perfume Worldwide*,
  No. 17 CV 2972, 2018 WL 1581975 (E.D.N.Y. Mar. 30, 2018) ....................................18, 23

*Chui v. Am. Yuexianggui of LI, LLC*,
  No. 18 CV 5091 (SJF)(AKT), 2020 WL 3618892 (E.D.N.Y. July 2, 2020).........................20

*Desir v. NYU Langone Health Sys.*,
  No. 19 Civ. 8144 (JPC)(SLC), 2020 WL 7631434 (S.D.N.Y. Oct. 19, 2020) ......................22

*Diaz v. S&H Bondi's Dep't Store, Inc.*,
  No. 10 Civ. 7676 (PGG), 2012 WL 137460 (S.D.N.Y. Jan. 18, 2012) ..................................24

*Eng-Hatcher v. Sprint Nextel Corp.*,
  No. 07 Civ. 7350 (BSJ), 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) ...............................16

*Garcia v. Pancho Villa's of Huntington Village*,
  678 F. Supp. 2d 89 (E.D.N.Y. 2010) .....................................................................................23

*Geng v. Shu Han Ju Rest. II Corp.*,
 No. 18 Civ. 12220 (PAE) (RWL), 2019 WL 4493429 (S.D.N.Y. Sept. 9,
 2019) ................................................................................................................23

*Gibbs v. MLK Express Servs., LLC*,
 2019 U.S. Dist. LEXIS 78007 (M.D. Fla. Mar. 28, 2019) ....................................19

*Gu v. T.C. Chikurin, Inc.*,
 No. 12 CV 2322 (SJ) (MDG), 2014 WL 1515877 (E.D.N.Y. Apr. 17, 2014) ........6

*Guillen v. Marshalls of MA, Inc.*,
 No. 09 Civ. 9575 (LAP), 2012 WL 2588771 (S.D.N.Y. June 30, 2012)................16

*Guo v. Tommy's Sushi*,
 No. 14 Civ. 3964 (PAE), 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014) ...............22

*Guzelgurgenli v. Prime Time Specials*,
 883 F. Supp. 2d 340 (E.D.N.Y. 2012) ..........................................................20, 21

*Hotaranu v. Star Nissan, Inc.*,
 No. 16 CV 5320 (KAM) (RML), 2017 WL 1390808 (E.D.N.Y. Apr. 12, 2017)...................19

*Ikikhueme v. CulinArt, Inc.*,
 No. 13 Civ. 293 (JMF) 2013 WL 2395020 (S.D.N.Y. June 3, 2013)....................16

*Islam v. LX Ave. Bagels*,
 No. 18 Civ. 4895, 2019 WL 5198667 (S.D.N.Y. Sept. 30, 2019) ...................20, 23

*Jenkins v. TJX Cos.*,
 853 F. Supp. 2d 317 (E.D.N.Y. 2012) ..................................................................5

*Jibowu v. Target Corp.*,
 — F. Supp. 3d —, 2020 WL 5820957 (E.D.N.Y. Sept. 30, 2020) .........................17

*Lin v. DJ's Int'l Buffet*,
 No. 17 CV 4994 (JS)(AYS), 2019 WL 5842798 (E.D.N.Y. Nov. 7, 2019) ...........20

*Marichal v. Attending Home Care Servs.*,
 432 F.Supp.3d 271 (E.D.N.Y. 2020) ...................................................................24

*Martin v. Sprint/United Mgmt. Co.*,
 No. 15 Civ. 5237, 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016).................................23

*Meo v. Lane Bryant, Inc.*,
 No. 18 CV 6360 (JMA) (AKT), 2019 WL 5157024 (E.D.N.Y. Sept. 30, 2019) ...................10

*Miller v. JAH, LLC*,
 2018 U.S. Dist. LEXIS 2139 (N.D. Ala. Jan. 5, 2018)........................................19

*Myers v. Hertz Corp.*,
 624 F.3d 537 (2d Cir. 2010)..............................................................................5

*Ni v. Red Tiger Dumpling House*,
 No. 19 CV 3269 (GRB) (AKT), 2020 WL 7078533 (E.D.N.Y. Nov. 30, 2020) .............18, 20

*Park v. FDM Grp. Inc.*,
 No. 16 Civ. 1520 (LTS) (SN), 2019 WL 2205715 (S.D.N.Y. May 22, 2019) .......................19

*Pettenato v. Beacon Health Options*,
 425 F.Supp.3d 264 (S.D.N.Y. 2019)...........................................................................19, 24

*Prizmic v. Armour, Inc.*,
 No. 05 CV 2503 (DLI) (MDG), 2006 WL 1662614 (E.D.N.Y. June 12, 2006) ....................6

*Realite v. Ark Rests. Corp.*,
 7 F. Supp. 2d 303 (S.D.N.Y. 1998)..............................................................................6

*Ritz v. Mike Rory Corp.*,
 No. 12 CV 367 (JBW) (RML), 2013 WL 1799974 (E.D.N.Y. Apr. 30, 2013).....................18

*Romero v. H.B. Automotive Group, Inc.*,
 No. 11 Civ. 386 (CM), 2012 U.S. Dist. LEXIS 61151 (S.D.N.Y. May 1, 2012)....................5

*Sanchez v. JMP Ventures*,
 No. 13 Civ. 7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ............................6, 10

*Scott v. Chipotle Mexican Grill*,
 954 F.3d 502 (2d Cir. 2020)......................................................................................5, 6

*Seever v. Carrols Corporation*,
 528 F.Supp.2d 159 (W.D.N.Y. 2007) .......................................................................17

*Sellers v. Sage Software, Inc.*,
 2018 U.S. Dist. LEXIS 188420 (N.D. Ga. May 25, 2018)......................................................19

*Serebryakov v. Golden Touch Transp.*,
 181 F.Supp.3d 169 (E.D.N.Y. 2016) ......................................................................23

*Sexton v. Franklin First Fin.*,
 No. 08 CV 4950 (JFB)(ARL), 2009 WL 1706535 (E.D.N.Y. June 16, 2009).......................22

*Sharma v. Burberry Ltd.*,
 52 F. Supp. 3d 443 (E.D.N.Y. 2014) ......................................................................15, 20

*Siewmungal v. Nelson Mgmt. Group*,
 No. 11 CV 5018 (BMC), 2012 WL 715973 (E.D.N.Y. Mar. 3, 2012)....................................22

*Slaughter v. Caidan Mgmt. Co., LLC*,
    317 F. Supp. 3d 981 (N.D. Ill. July 5, 2018) ........................................................................19

*Tanski v. Avalonbay Cmty.*,
    No. 15 CV 6260 (AKT), 2017 WL 10858910 (E.D.N.Y. Mar. 31, 2017).........................19, 21

*Valerio v. RNC Inds.*,
    314 F.R.D. 61 (E.D.N.Y. 2016) ...................................................................................6, 17

*Warman v. American Nat'l Standards Inst.*,
    193 F. Supp. 3d 318 (S.D.N.Y. 2016)...............................................................................6, 7

*Whitehorn v. Wolfgang's Steakhouse*,
    767 F.Supp.2d 445 (S.D.N.Y. 2011).................................................................................18

*Wolfram v. PHH Corp.*,
    No. 1:12-cv-599, 2012 U.S. Dist. LEXIS 181073 (S.D. Ohio Dec. 21, 2012).......................21

*Zheng v. Good Fortune Supermarket Grp. (USA) Inc.*,
    No. 13 CV 60 (ILG), 2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013)...................................11

*Zhongle Chen v Kicho Corp.*,
    No. 18 Civ. 7412 (PMH) (LMS), 2020 WL 1900582 (S.D.N.Y. Apr. 17, 2020).............22, 23

I.    **PRELIMINARY STATEMENT**

Based on *three* declarations from former employees who have not worked for New York Community Bank ("NYCB") since June 2019 or earlier, Plaintiffs Michelle Lopez and Joseph Giuffre ask this Court to conditionally certify a collective action under the Fair Labor Standards Act. Such a ruling would result in the issuance of notice of the lawsuit to approximately 490 current and former Assistant Branch Managers ("ABMs") and Branch Operations Coordinators ("BOCs") who worked for NYCB in New York during the relevant time period and give them the right to join the lawsuit. Conditional certification of a collective action would, therefore, have a significant impact on the size, scope, and cost of this litigation to NYCB. Because of that, Plaintiffs bear the burden of demonstrating the existence of a *companywide policy that violates the FLSA* before such notice can be issued. They, however, have failed to make such a showing.

In support of their motion, Plaintiffs contend that they are entitled to unpaid overtime wages for off-the-clock work purportedly performed during opening and closing procedures and interrupted meal breaks at their branch locations. The sole evidentiary support offered by Plaintiffs consists of declarations from three former ABMs and BOCs concerning their experiences at five branches during the relevant period, which comes nowhere close to justifying the certification of the actual collective they propose here – one covering 490 ABMs and BOCs who worked at *any* of NYCB's 136 branches throughout the state of New York in the last three years. (Plaintiffs' Motion for Conditional Certification, Docket Entry No. 31 ("Plf. Mot."), at 1).

To warrant certification of such a broad collective, Plaintiffs must produce evidence demonstrating a common policy or plan, requiring ABMs and BOCs to perform off-the-clock work, applicable to all ABMs and BOCs working at all of NYCB's 136 New York branch locations, without any localized variation or local manager discretion. Here's what they offer:

- Three declarations representing the collective experiences of *less than one percent* of the putative collective of 490 individuals (3/490 = **0.6% of the collective**). *See* Declaration of Salvatore J. Spano ("Spano Decl.") at ¶ 3.

- Three declarations representing what allegedly occurred in 5 out of 136 branches in New York during the relevant period, which represents 3.6% of NYCB's branch locations in New York. *See* Spano Decl. at ¶ 2.

- A declaration from Samantha Gomez – who has not worked for NYCB since June 2018. A declaration from Michelle Lopez – who has not worked for NYCB since November 2018. And a declaration from Jamie Metwally – who has not worked for NYCB since June 2019.

- Three declarations that contradict NYCB policy and the experiences of other ABMs and BOCs who, as detailed below, testified that they are paid for all opening procedures, are not interrupted during meal periods, and remain on the clock through the closing of the branch.

- Three declarations rife with hearsay regarding the alleged working conditions of other ABMs and BOCs in an effort to manufacture "evidence" of a company policy to deprive New York employees of overtime, when, in reality, NYCB pays its ABMs and BOCs above and beyond what it required by the FLSA through payment for 40 hours in a week when they work between 39 and 40 hours in a week and pay for a full 40 hour workweek despite working reduced schedules due to COVID. *See* Spano Decl. at ¶¶ 25-27.

What's more, Plaintiffs fail to demonstrate how their *own* experiences at their *own* five locations during the relevant period were commonly shared by other ABMs and BOCs working at NYCB's other 131 New York branches. The evidence detailed below shows that (1) NYCB has maintained a policy whereby each branch location assesses the amount of time it takes to conduct morning opening procedures at that particular branch and that amount of time is added for each employee performing opening procedures – and a reminder of this policy gets disseminated to all

ABMs and BOCs twice per week; (2) NYCB staffs its branch locations such that there is always management coverage for lunch breaks, including by way of the use of management floaters, to ensure there are no interrupted breaks; and (3) NYCB prohibits off-the-clock work, requiring employees to remain on the clock through the closing of the branch.  Given these facially lawful policies, to prevail on their motion, Plaintiffs must proffer evidence of an unlawful companywide practice to violate the lawful written pay practices that NYCB implemented.  Three declarations from a sliver of the putative class does not come close to meeting that standard.  As such, Plaintiffs' motion for conditional certification should be denied, at least with respect to the 131 New York branches from which they have offered absolutely no evidence.

## II.    STATEMENT OF RELEVANT FACTS

### A.    New York Community Bancorp, Inc. and its Subsidiaries

Defendant New York Community Bancorp, Inc. is a bank holding company.  *See* New York Community Bancorp, Inc. 2019 Form 10-K Annual Report, at pt. 1, item 1, *available at* http://eproxymaterials.com/interactive/nycb2019/.   One of its subsidiaries is NYCB.  *Id.* Defendant New York Commercial Bank is a former subsidiary of New York Community Bancorp, which was combined with NYCB into a single financial institution operating as NYCB effective November 30, 2018 (Answer, Docket Entry No. 17. at ¶ 1).  Today, NYCB is a New York State-chartered savings bank with over 230 branch locations in the United States, operated and organized through eight local divisions. *See* New York Community Bankcorp, Inc. 2019 Form 10-K Annual Report, at pt. 1, item 1.  Through these varied divisions, NYCB operates branches located in all five boroughs of New York City, as well as in Nassau, Suffolk, and Westchester Counties. *Id.*  In addition, NYCB operates branches in New Jersey, Arizona, Ohio, and Florida through NYCB's other localized divisions.  *Id.*

### B.      Plaintiffs' FLSA Allegations

NYCB employed Plaintiff Michelle Lopez as an ABM at NYCB's Woodhaven, New York

branch location (*See* Complaint ¶ 6; Declaration of Michelle Lopez dated January 12, 2021, Docket

Entry No. 31-3 ("Lopez Decl."), at ¶ 2).   Opt-In Plaintiff Samantha Gomez alleges that, during the

relevant time period, she was employed as a BOC at two separate NYCB branches located on

Hylan Boulevard in Staten Island, New York (Declaration of Samantha Gomez, Docket Entry No.

31-4 ("Gomez Decl."), at ¶¶ 2-3).   During the relevant period, Opt-In Plaintiff Jamie Metwally

alleges that she also was employed as a BOC, and later as an ABM, at two of NYCB's other Staten

Island branches located in Seguine and Eltingville (Declaration of Jamie Metwally, dated January

13, 2021, Docket Entry No. 31-5 ("Metwally Decl."), at ¶¶ 3-4).[1]

Plaintiffs allege that NYCB deprived them of overtime compensation by failing to pay

them for (i) branch opening activities they performed "before clocking in for the start of their

scheduled shifts;" (ii) branch closing activities they performed "after clocking out for the end of

their scheduled shifts;" and (iii) occasional "interrupt[ions] during their meal breaks," which they

took on a "clock[ed] out" basis. (Complaint at ¶¶ 33-35).   According to Plaintiffs, NYCB's

supposed failure to pay them for this time constitutes a "pattern, practice, and/or policy of violating

the FLSA." (*Id.* at ¶ 46).   In their instant motion, Plaintiffs ask the Court to conditionally certify

the following collective and issue notice to its members under Section 216(b) of the FLSA:

> [A]ll non-exempt hourly [ABMs] and [BOCs] and employees in similar job
> positions with different titles … who worked for Defendants New York
> Community Bancorp., Inc., New York Community Bank, or New York
> Commercial Bank … in New York at any time since June 19, 2017.

---

[1] Plaintiffs do not offer declarations from Plaintiff Joseph Giuffre or Opt-In Plaintiff Theresa
Gallehr in support of their motion for conditional certification because neither Plaintiff Giuffre nor
Opt-In Plaintiff Gallehr worked for NYCB during the three-year FLSA limitations period. (Plf.
Mot. at 2 n.2).   Accordingly, neither Plaintiff Giuffre nor Opt-In Plaintiff Gallehr are potential
members of the proposed FLSA collective.

(Plf. Mot. at 1).[2]  Plaintiffs, however, have not come close to proffering evidence of a common unlawful policy to deprive ABMs and BOCs throughout New York of overtime compensation.

## III.   CONDITIONAL CERTIFICATION OF PLAINTIFFS' PROPOSED COLLECTIVE SHOULD BE DENIED

### A.   Conditional Certification Standard

Procedurally, the certification of an FLSA collective involves a two-step process. *Scott v. Chipotle Mexican Grill*, 954 F.3d 502, 515 (2d Cir. 2020).  The first step, which is at issue here, requires Plaintiffs to make a "factual showing that they and potential opt-in plaintiffs" are similarly situated within the meaning of Section 216(b) to warrant the dissemination of notice about, and afford the putative collective members the opportunity to join, the lawsuit. *Myers v. Hertz Corp*., 624 F.3d 537, 555 (2d Cir. 2010).  This requires Plaintiffs to demonstrate that they are "'similarly situated' to the opt-in 'party plaintiffs,'" in that they all "together were victims of a ***common*** policy or plan that violated the law." *Scott*, 954 F.3d at 515 (emphasis added).

While "the FLSA . . . imposes a lower bar than Rule 23" for maintenance of a collective action, *Scott*, 954 F.3d at 520, the Plaintiffs' burden "is not non-existent" and collective certification "is not automatic." *Jenkins v. TJX Cos.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012) (quotations omitted).  It is incumbent upon Plaintiffs to proffer substantial allegations of a "factual nexus" that binds them with potential collective members as victims of a "particular practice." *Jenkins*, 853 F.Supp.2d at 322; *Romero v. H.B. Automotive Group, Inc.*, No. 11 Civ. 386 (CM), 2012 U.S. Dist. LEXIS 61151, *23-24 (S.D.N.Y. May 1, 2012).  Plaintiffs must, therefore, first demonstrate that ABMs and BOCs fell victim to a common policy or plan ***that violated the law***. *Jenkins*, 853 F.Supp.2d at 321.  In other words, Plaintiffs must show that NYCB implemented a

---

[2] While Plaintiffs seek a collective dating back to June 19, 2017, the applicable statute of limitations is no more than three years, so the relevant time period only dates back three years prior to any conditional certification order and any such order should be so limited.

common policy or practice to deprive ABMs and BOCs *throughout New York* of overtime compensation for performing opening procedures, closing procedures, and taking interrupted meal periods.

While the Court need not evaluate the merits of Plaintiffs' claims to determine whether conditional certification is appropriate, *Valerio v. RNC Inds.*, 314 F.R.D. 61, 67 (E.D.N.Y. 2016), the Court must be satisfied that Plaintiffs have offered evidence sufficient to demonstrate that the named and potential plaintiffs together were victims of a common policy or plan that violated the law. *Scott*, 954 F.3d at 515; *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). After all, "[t]he notice and opt-in process outlined by the FLSA is not a discovery device to determine whether conditional certification is appropriate," *Sanchez v. JMP Ventures*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014), and Plaintiffs cannot satisfy their burden "by unsupported allegations, or with conclusory allegations," or through speculation. *Benavides v. Serenity Spa NY*, 166 F. Supp. 3d 474, 478 (S.D.N.Y. 2016); *Warman v. American Nat'l Standards Inst.*, 193 F. Supp. 3d 318, 325 (S.D.N.Y. 2016) ("speculation, unsupported by any evidence, is entitled to no weight").

Plaintiffs "can rely on the pleadings, ***but only as supplemented by other evidence***." *Bittencourt v. Ferrara Bakery & Café*, 310 F.R.D. 106, 111 (S.D.N.Y. 2015) (emphasis added); *Prizmic v. Armour, Inc.,* No. 05 CV 2503 (DLI) (MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) ("[M]ere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made") (quotation omitted).  Ultimately, Plaintiffs must offer "actual evidence of a factual nexus" between their situation and those that they claim are similarly situated" here.  *Gu v. T.C. Chikurin, Inc.*, No. 12 CV 2322 (SJ) (MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014).

**B.      Plaintiffs Failed to Demonstrate the Existence of a Common Unlawful Policy**

Conditional certification should be denied because Plaintiffs have failed to offer evidence demonstrating that ABMs and BOCs working at NYCB branch locations in New York were commonly subjected to the same alleged off-the-clock practices that they purportedly experienced at their particular work sites.  The only "evidence" Plaintiffs offer in support of a common unlawful policy is a job description for the Assistant Branch Manager position (Docket Entry No. 31-1), coupled with declarations from Plaintiff Lopez and Opt-In Plaintiffs Gomez and Metwally regarding the practices and policies they supposedly experienced at the single Queens and four Staten Island NYCB branch locations where they worked during the relevant period.  Although they claim to have performed off-the-clock work opening and closing branches and during meal breaks, and allege hearsay from co-workers *at their own branches* who supposedly shared similar experiences*, they offer no allegation, testimony, or other evidence to suggest those same practices existed at any other branch location.

Given the broad scope of their proposed collective, this is a critical omission.  Plaintiffs cannot rely on unsupported allegations and sheer speculation to suggest that the policies and practices they supposedly experienced at 5 of 136 branches also existed at *all* of NYCB's other branches. *Warman*, 193 F. Supp. 3d at 325 (in the conditional certification context, "speculation, unsupported by any evidence, is entitled to no weight").  And, as demonstrated by the evidence discussed below, Plaintiffs' experiences were, if anything, localized in nature, further evidencing why Plaintiffs' proposed collective cannot be certified based on the limited evidentiary record they have offered.

**1.      *Compensation For Branch Opening Procedures***

For security purposes, each day at an NYCB branch location begins with a security sweep in which a management employee enters the branch and walks through all of the rooms and floors

in the entire facility to ensure it is secure.  *See* Spano Decl. at ¶ 4.  Because ABMs and BOCs clock into work on computer terminals inside the branch, they are unable to punch into work prior to conducting the security sweep.  (*Id.*)  To ensure employees, including ABMs and BOCs, are compensated for this time, branch locations have determined the amount of time it takes to conduct the security sweep at their particular location.  (*Id.* at ¶ 6)  This amount of time may differ from approximately five to ten minutes depending on the particular branch as some are larger than others, have more rooms, and have additional floors.  (*Id.* at ¶ 7)  The amount of time it takes to perform a security sweep is added to the employee schedule, which identifies who is opening the branch on any given day, and that time is then manually added to the time records of the individuals who performed the opening security sweep.  (*Id.* at ¶ 8)  This process has been in place for over four years and throughout that time, bi-weekly emails have been sent to branch management, including ABMs and BOCs, reminding them to add the time for opening procedures to the time records of those who open the branch.  (*See id.* at ¶ 9 & Exhibit A attached thereto)

Despite this process, Plaintiff Lopez and Opt-In Plaintiffs Gomez and Metwally claim that they were not compensated for performing procedures associated with the opening of the five branches where they personally worked.  (Complaint at ¶¶ 32-33).  According to Plaintiff Lopez, her Branch Manager directed her to work as much time as necessary to complete her job duties, but local branch management would allegedly adjust her hours worked to reduce them to 40 hours or less. (Lopez Decl. ¶¶ 14, 18).  In her interrogatory answers, Plaintiff Lopez concedes that her claims stem from modifications made to her time records by her Branch Manager at the location where she worked – not any companywide policy. (Plaintiff Michelle Lopez's Responses and Objections to Defendant's First Set of Interrogatories at p. 8, attached as Exhibit A to the Declaration of Timothy S. Anderson ("Anderson Decl.")).  Opt-In Plaintiff Gomez similarly contends that her local branch managers would reduce her hours worked to ensure she did not have

any overtime hours recorded.  (Gomez Decl. at ¶¶ 14, 18).  And Opt-In Plaintiff Metwally alleges

that, while she was never told not to record all of her hours worked, "the recognized rule of my

branch" was not to record all hours worked.  (Metwally Decl. at ¶ 21).  She, however, admits in

her interrogatory answers that she "cannot recall requesting payment for performing off-the-clock

work and being denied for such payment," because her supervisors at the branch where she worked

"made it clear" to her that she needed to work as much time as necessary to get the job done. (Opt-

in Plaintiff Jamie Metwally's Responses and Objections to Defendant's First Set of Interrogatories

at p. 6, attached as Exhibit B to Anderson Decl.).  Hence, by their own admission, Lopez, Gomez,

and Metwally can only speak to what they experienced at their own branches as allegedly dictated

by branch management; not any companywide policies or procedures.  The experiences of Plaintiff

Lopez and Opt-In Plaintiffs Gomez and Metwally, however, were neither common nor universal

and were certainly contrary to NYCB policy and procedure.

ABMs and BOCs who worked at other branch locations confirm that, consistent with the

aforementioned process, their time records were manually adjusted by other managers at their

branches to account for branch opening activities, and that they were in fact compensated for

performing those activities. *See, e.g.*, Declaration of Brian E. Williams ("Williams Decl.") at ¶¶ 4-

8 (noting that during his tenure as an Assistant Branch Supervisor and ABM at several NYCB

branch locations in Suffolk County, he was "always paid for the time [he] worked performing

opening procedures" through a manual time record adjustment process); Declaration of Robert J.

Cuoco III ("Cuoco Decl.") at ¶¶ 4-10 (confirming that he was always paid for opening procedures

at several of NYCB's Suffolk County branches); Declaration of Miriam Checo ("Checo Decl.") at

¶ 12 (confirming that she was always paid for opening procedures at Queens County branch

locations different from those at which Plaintiff Lopez worked); Declaration of Anna R.

Daszykowska ("Dasyzkowska Decl.") at ¶¶ 3-7 (confirming that she was always paid for opening

procedures at a Suffolk County branch location); Declaration of Michael R. Mullaney ("Mullaney Decl.") at ¶¶ 10-11 (confirming that he was always paid for opening procedures at various NYCB branches in Nassau County); Declaration of Cristina Paucar ("Paucar Decl.") at ¶¶ 6-13 (confirming that employees are paid for opening procedures at both buildings her branch).[3] Indeed, Mullaney confirms that he "received emails from management reminding Branch Managers, Assistant Branch Managers, and Branch Operations Coordinators to add time to electronic time records" through the manual adjustment process "to account for opening procedures" (Mullaney Decl. at ¶¶ 10-11).

Accordingly, while Plaintiffs claim in their letter motion that ABMs are not compensated for "various opening procedures, including conducting security sweeps, opening the branch, and logging into the computer," they have presented no evidence of an illegal companywide practice not to pay for such work.  To the contrary, the evidence discussed above shows that NYCB has a process in place to ensure ABMs and BOCs are compensated for performing opening procedures, and the attached declarations confirm that they are indeed paid for this time.  *See* Spano Decl. at ¶¶ 11-12 & Exhibits B and C attached thereto (discussing policies and procedures to compensate employees for opening procedures).  As such, Plaintiff Lopez and Opt-In Plaintiffs Gomez and Metwally have not – and clearly cannot based on the testimony of other ABMs and BOCs – established that their own personal experiences were part of a policy and practice that applied at

---

[3] While it "would be improper for the Court to consider any evidentiary offering made by [NYCB] to ***rebut***" the declarations of Plaintiff Lopez and Opt-In Plaintiffs Gomez and Metwally, *Meo v. Lane Bryant, Inc.*, No. 18 CV 6360 (JMA) (AKT), 2019 WL 5157024, at *8 (E.D.N.Y. Sept. 30, 2019) (emphasis added), here the testimony of other non-party ABMs and BOCs is not offered to rebut or contradict their testimony.  Instead, such testimony is offered to fill in the evidentiary gap left by the shortcomings in Plaintiffs' own declarations concerning the relevant wage and hour practices at NYCB's ***other branch locations*** (about which Plaintiffs have offered no evidence).  As explained *infra*, whether such testimony is considered by the Court, Plaintiffs' limited evidentiary submissions are wholly inadequate to warrant certification of any FLSA collective spanning all of NYCB's New York branches.

all of NYCB's 131 other branches in New York. *See, e.g., Sanchez*, 2014 WL 465542, at *2 (denying conditional certification to encompass three separate restaurant locations when the plaintiff did not "provide any detail as to a single such observation or conversation" that "policies to which he was subjected" during his employment by the defendants "were the 'common practice' at all Harry's Italian Restaurants"); *Zheng v. Good Fortune Supermarket Grp. (USA) Inc.*, No. 13 CV 60 (ILG), 2013 WL 5132023, at *5 (E.D.N.Y. Sept. 12, 2013) (denying conditional certification where plaintiff failed to show that she and "fellow clerks at the three [ ] locations were victims of a common policy or plan that violated the law" because plaintiff "has made no effort to detail the precise mechanisms by which she observed any other clerk being injured").

## 2.   *Interrupted Meal Periods*

Lopez and Opt-In Plaintiffs Gomez and Metwally also contend that they were required to "clock out for their meal break" but were "interrupted . . . to assist on the teller line and to do overrides," resulting in time worked for which they received no compensation. (Complaint at ¶ 34).  They all claim that local branch management would interrupt them during their meal breaks to assist on the teller line or answer questions. (Lopez Decl. at ¶ 9; Gomez Decl. at ¶ 9; Metwally Decl. at ¶ 11).  Again, however, their individual experiences at the branches where they worked are inconsistent with company policy and the experiences of the ABMs and BOCs to whom they contend to be similarly situated.

Most NYCB branches are staffed with a Branch Manager, an Assistant Branch Manager, and at least one Branch Operations Coordinator.  *See* Spano Decl. at ¶ 15.  NYCB provides such coverage to ensure excellent customer service, but also to provide for adequate staffing for meal periods, such that employees are not interrupted during their breaks.  (*Id.* at ¶¶ 13-16; Exhibits D, E, & F to Spano Decl.)  NYCB also uses what is referred to as an SOS unit that essentially consists of management floaters who travel between branches as needed to ensure adequate staffing.  (*Id.*

at ¶¶ 17 -18)  Because of this staffing model, there are very few occasions when an ABM or BOC would need to be called away from a meal period to address an issue in the branch, insofar as another manager is almost always on duty to handle such issues.  (*Id.* at ¶ 19)  In fact, ABMs and BOCs are generally free to leave the branch for their meal period.  (*Id.* at ¶ 20)  In the rare instances when a meal period is interrupted, NYCB has an exception reporting process to ensure the employee is paid for the meal period or receives a full, uninterrupted meal period later in their shift.  (*Id.* at ¶ 21)

Given this staffing model, ABMs and BOCs working at other branch locations confirm that they are routinely permitted to take full, uninterrupted meal breaks because of proper staffing, staggered management break schedules, and the availability of persons from the regional SOS Unit to come to the branch to provide coverage so that the ABMs and BOCs on duty could take uninterrupted meal breaks.  *See, e.g.*, Cuoco Decl. at ¶¶ 11-12, 17-21; Mullaney Decl. at ¶¶ 12-15, 21-25; Checo Decl. at ¶¶ 14-16, 21-23; Daszykowska Decl. at ¶¶ 8-12; Williams Decl. at ¶¶ 9-11, 16-18; Paucar Decl. at ¶¶ 14-18;  Declaration of Tammy C. Roland ("Roland Decl.") at ¶¶ 6-7, 12-13.  Unlike Lopez, Gomez, and Metwally, these individuals all confirm that they have not been interrupted during their off-duty meal periods.  (*See id.*)

Consequently, while Lopez, Gomez, and Metwally may have experienced interrupted meal periods at their particular branches, they have not proffered evidence showing the existence of an unlawful, common policy to interrupt ABM and BOC meal periods throughout New York.  To the contrary, the evidence shows that a process was put in place to ensure that ABMs and BOCs are not interrupted during their meal periods and that, as a result, many of them did not experience any interrupted meal periods.  As such, even accepting for the purposes of this motion only that managers and/or other employees interrupted Lopez, Gomez, and Metwally during their lunch breaks to have them do work, their experiences are not shared by other putative collective members

who had different experiences working in *other* branches – and Plaintiffs have not offered any evidence to support an inference to the contrary.  Hence, Plaintiffs lack evidence of a common unlawful policy resulting in interrupted meal periods.

### 3.    *Compensation For Branch Closing Procedures*

Plaintiffs further contend that they performed off-the-clock work after clocking out at the end of their shifts, consisting of "balancing the teller drawers, cleaning the branch, and closing the branch." (Complaint at ¶ 35).  Once again, however, they presented no evidence that NYCB required ABMs and BOCs throughout New York to perform such work off of the clock.  Indeed, ABMs and BOCs working at other branch locations had very different experiences, confirming that they only clocked out **after** performing all of their branch closing activities, and therefore, were fully compensated for performing such closing activities.  *See, e.g.*, Daszykowska Decl. at ¶¶ 12-15; Checo Decl. at ¶¶ 18-23; Mullaney Decl. at ¶¶ 16-25; Cuoco Decl. at ¶¶ 13-21; Williams Decl. at ¶¶ 12-18; Paucar Decl. ¶¶ 19-23; Roland Decl. at ¶¶ 8-13.

The experiences of these ABMs and BOCs are consistent with NYCB policy, which prohibits employees from performing work off-of-the-clock and expects that all closing procedures be performed while employees are clocked into work.  *See* Spano Decl. at ¶¶ 23-24.  That certainly has been the experience of the aforementioned declarants -- all of whom confirm that they performed all closing procedures while on-the-clock and did not clock out of work until they were ready to depart from the branch.  *See* Daszykowska Decl. at ¶¶ 12-15; Checo Decl. at ¶¶ 18-23; Mullaney Decl. at ¶¶ 16-25; Cuoco Decl. at ¶¶ 13-21; Williams Decl. at ¶¶ 12-18; Paucar Decl. ¶¶ 19-23; Roland Decl. at ¶¶ 8-13.  Such testimony once again demonstrates that the experiences of Plaintiff Lopez and Opt-In Plaintiffs Gomez and Metwally were not commonly shared by ABMs and BOCs at other NYCB branch locations.  Thus, Plaintiffs failed to proffer evidence of a

Company policy requiring ABMs and BOCs throughout New York to perform closing procedures while off-the-clock.

### 4. *Plaintiffs Fail to Establish that NYCB Subjects ABMs and BOCs to a Common Policy that Violates the Law*

In summary, Plaintiffs do not allege an official NYCB policy that requires ABMs and BOCs to work off-the-clock or to refrain from recording all hours worked; they just recount their individual experiences stemming from their particular branches. (*See*, e.g., Metwally Decl. at ¶ 21 ("no one ever explicitly told me not to record all my time")). Plaintiffs do not even allege that NYCB's official policies are unlawful and, pursuant to such unlawful policies, Plaintiffs and putative members were commonly injured. Instead, Plaintiffs premise the instant application for conditional certification on alleged deviations from the Company's lawful policies attributable to the individuals' particularized experiences at their branches under their respective managers. (*See Gomez Decl.* at ¶ 18 (because managers allegedly adjusted her timesheets when it reflected overtime hours, "I attempted to only record up to 40 hours each week")).

As such, Plaintiffs must establish that these deviations from Company policy – (1) to not pay ABMs and BOCs for opening procedures; (2) to interrupt ABM and BOC meal periods to perform work; and (3) to not pay ABMs and BOCs for closing procedures – constitute common unlawful policies that deprived ABMs and BOCs throughout New York of overtime compensation. But as set forth above, Plaintiffs' application for conditional certification is premised only on anecdotal evidence, by three former ABMs and BOCs out of a putative collective of 490 individuals, based on an alleged practice by some branch management members (who allegedly violated NYCB's lawful policies) at five out of 136 NYCB New York locations, *i.e.*, less than four percent of NYCB's branches.

In addition, Lopez, Gomez, and Metwally unsuccessfully attempt to bolster their "evidence" by including sections in their declarations discussing "other ABMs like me."  As an initial matter, these allegations are hearsay statements that are not based on personal knowledge and should be disregarded.  Furthermore, offering "evidence" regarding the experiences of ABMs and BOCs who worked "alongside" Lopez, Gomez, and Metwally does nothing to establish the existence of a common unlawful policy permeating all of NYCB's New York branches.

Plaintiffs have failed to offer any evidence showing that ABMs and BOCs at other New York branches were not compensated for opening procedures, were interrupted during meal periods, and were not compensated for closing procedures.  Indeed, the evidence proffered herein by NYCB proves just the opposite – there is no common unlawful policies or practices that deprive New York ABMs and BOCs of pay for opening procedures, closing procedures, or meal periods. As such, because Plaintiffs have offered an inadequate evidentiary record beyond their own alleged experiences with their respective managers at their branch locations, Plaintiffs' motion for conditional certification of a collective action covering nearly 500 New York ABMS and BOCs must be denied.  Conditional certification of such a broad collective cannot be based solely on testimony by three individuals regarding their dated personal experiences at a handful of locations, coupled with speculation (but not evidence) that the same sort of wage and hour practices applied at a defendant's other locations. *Anjum v. J.C. Penny Co.*, No. 13 CV 460 (RJD), 2015 WL 3603973, at *8 (E.D.N.Y. June 5, 2015)(denying certification of proposed collective of those employed at all of the defendant's New York stores, but granting conditional certification of a more limited collective comprised of those who worked at the same Staten Island and Manhattan stores as the named plaintiffs, because the plaintiffs failed to provide the court with "firsthand evidence of violations at any of the [other] J.C. Penny retail stores in the State of New York"); *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 457-60 (E.D.N.Y. 2014)(denying certification of

proposed collective to the extent it sought to include persons employed in stores in New York and other states besides those where plaintiffs worked because the plaintiffs' own experiences at a limited number of New York stores were "too conclusory to support certification of" any broader collective comprising the sales associates at other New York or national locations); *Guillen v. Marshalls of MA, Inc.*, No. 09 Civ. 9575 (LAP), 2012 WL 2588771, *1-2 (S.D.N.Y. June 30, 2012)(finding that "a handful of [Assistant Store Manager] affidavits, each of which recounts individual incidents of being required to perform non-exempt tasks" failed to show that the named plaintiff and thousands of other employees across the country were victims of a common policy or plan that violated the law); *Ahmed v. T.J. Maxx Corp.*, No. 10 CV 3609 (ADS) (ETB), 2013 WL 2649544, *13-14 (E.D.N.Y. June 8, 2013)(allegations of ASMs from a handful of stores in "the tri-state area and in Arkansas" were not enough to establish a companywide policy, noting that differences between the testimony of the named plaintiff and other ASM deponents makes the evidence of a nationwide de facto alleged policy "extremely thin"); *Ikikhueme v. CulinArt, Inc.*, No. 13 Civ. 293 (JMF) 2013 WL 2395020, at *1-2 (S.D.N.Y. June 3, 2013)(denying conditional certification because plaintiff's claims, arising from a single location and containing "unsupported assertions" regarding other employees, could not establish a factual nexus with approximately 200 different locations across the country); *Brickey v. Dolgencorp., Inc.*, 272 F.R.D. 344, 348 (W.D.N.Y.2011)("Although [the] plaintiffs have offered some evidence that certain Dolgencorp managers flouted Dolgencorp's policies [by violating the FLSA overtime provisions], [the] plaintiffs have not shown that such activity was widespread or common practice, or that the managers did so because they were instructed, compelled, forced, or encouraged to do so by other Dolgencorp policies"); *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350 (BSJ), 2009 WL 7311383, at *3-5 (S.D.N.Y. Nov. 13, 2009)(denying conditional certification where plaintiff's allegations were premised on a facially lawful policy and she lacked evidence of an illegal

nationwide policy); *Seever v. Carrols Corporation*, 528 F.Supp.2d 159, 173-174 (W.D.N.Y. 2007)(denying conditional certification due to the lack of evidence of a "generalized, company-wide policy to violate the FLSA, as opposed to the unilateral acts of a few rogue managers"); *Jibowu v. Target Corp.*, — F. Supp. 3d —, 2020 WL 5820957, at *25 (E.D.N.Y. Sept. 30, 2020)(denying certification of proposed nationwide FLSA collective because plaintiffs, while plausibly suggesting that FLSA violations occurred at the stores they personally worked at, failed to demonstrate that "there [wa]s no localized variation with respect to practices in Defendant's stores" nationwide).

## IV.   IF CERTIFICATION OF SOME NARROWER COLLECIVE IS GRANTED, THE PROPOSED NOTICES, NOTICE PERIOD, CONSENT FORMS AND DISTRIBUTION PLAN MUST BE REVISED

Even if the Court conditionally certifies some narrower FLSA collective here (and it should not), Plaintiffs' proposed notice period, notice and consent forms, and distribution plan require revision.  While NYCB summarizes some of its major objections below, if the Court finds that some notice should be issued, the Court should direct the parties to confer in a good faith attempt to agree upon the content, form, and distribution of that notice and, to the extent the parties are unable to reach agreement, brief any outstanding issues for resolution by the Court. *Valerio v. RNC Inds.*, 314 F.R.D. 61, 76-77 (E.D.N.Y. 2016)(following conditional certification, directing the parties to meet and confer regarding the notice and distribution plan).

### A.   The Notice Period Should Be Three Years From The Date Of The Court's Conditional Certification Order, Not The Filing Of The Complaint

Plaintiffs propose that notice be disseminated to persons who were "employed . . . after June 19, 2017" – in other words, three years before Plaintiffs' complaint was filed. (Docket Entry No. 31 at 3).  However, the statute of limitations for FLSA claims is two years, except in cases of

willful violations, where it is extended to three years. 29 U.S.C. § 255(a), 29 U.S.C. § 256(b).[4]

Because that limitations period continues to run "for each individual plaintiff until he consents to

join the action," *Whitehorn v. Wolfgang's Steakhouse*, 767 F.Supp.2d 445, 451 (S.D.N.Y. 2011),

"the notice period generally should be measured from the date of the court's order granting the

motion for conditional certification, not from the date that the complaint was filed." *Ritz v. Mike

Rory Corp.*, No. 12 CV 367 (JBW) (RML), 2013 WL 1799974, at *3 (E.D.N.Y. Apr. 30, 2013)

(citing *Hernandez v. Immortal Rise*, No. 11 CV 4360 (RRM) (LB), 2012 WL 4369746, at *6-7

(E.D.N.Y. Sept. 24, 2012)); *see, e.g.*, *Castillo v. Perfume Worldwide,* No. 17 CV 2972 (JS) (AKT),

2018 WL 1581975, at *15 (E.D.N.Y. Mar. 30, 2018)(notice period for an FLSA collective

typically runs "back from the date of the conditional certification order or the [date of mailing of

the] notice since the FLSA statute of limitations continues to run until a plaintiff consents to join

the action").   Accordingly, if the Court does conditionally certify a collective action, the notice

and collective periods should include persons employed by NYCB within the three years preceding

the date of entry of the Court's certification order.

### B.    Distribution of Notice by Text Messaging and Through a Website, as Well as Use of a "Reminder" Notice, is Unnecessary and Improper

Plaintiffs request that the notices and consent forms be disseminated "by (a) mail; (b) email,

(c) text message, (d) physical posting at the various branches; and (e) posting to a standalone

website," and that Plaintiffs should be permitted to send "a reminder notice . . . via mail, email and

text" in advance of the opt-in deadline. (Doc. 31 at 3)  NYCB does not object to the dissemination

---

[4] Although NYCB disputes Plaintiffs' allegations of willful conduct, NYCB does not dispute that if the Court certifies some collective, the applicable notice period should be three years.  *See Ni v. Red Tiger Dumpling House*, No. 19 CV 3269 (GRB) (AKT), 2020 WL 7078533, at *9 (E.D.N.Y. Nov. 30, 2020) ("[C]ourts in this circuit have generally held that where willfulness is in dispute, a three-year state of limitations applies at the conditional certification stage.") (quoting *Alvarez v. IBM Rests.*, 839 F. Supp. 2d 580, 587-88 (E.D.N.Y. 2012)).

of notice by mail or email, but issuance of notice beyond a single mail and email notice is redundant and unnecessary. Such is particularly true with respect to text message notices, which have not only been deemed unnecessary, but arguably a violation of the Telephone Consumer Protection Act. *Miller v. JAH, LLC*, 2018 U.S. Dist. LEXIS 2139 (N.D. Ala. Jan. 5, 2018)(sending potential class members text messages will subject them to the annoyance of unsolicited messages that Congress passed the Telephone Consumer Protection Act, in part, to address); *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2017 U.S. Dist. LEXIS 129955 (S.D. Ohio Aug. 14, 2017)("Plaintiffs may not notify potential opt-in collective members of the lawsuit via text message, unless they can show that notice via postal and electronic mail is insufficient as to a given potential member); *Gibbs v. MLK Express Servs., LLC*, 2019 U.S. Dist. LEXIS 78007 (M.D. Fla. Mar. 28, 2019)(denying notice by text message); *Sellers v. Sage Software, Inc*., 2018 U.S. Dist. LEXIS 188420 (N.D. Ga. May 25, 2018)(same); *Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp. 3d 981 (N.D. Ill. July 5, 2018)(same); *Park v. FDM Grp. Inc*., No. 16 Civ. 1520 (LTS) (SN), 2019 WL 2205715 (S.D.N.Y. May 22, 2019)(same). Hence, Plaintiffs' request for text message notices should be denied, particularly since Plaintiffs offer no justification for why use of text messaging as a third medium of dissemination is necessary. *See, e.g.*, *Pettenato v. Beacon Health Options*, 425 F.Supp.3d 264, 286 (S.D.N.Y. 2019) (absent an explanation why the use of mail and email alone to distribute FLSA notice would be ineffective, "Plaintiffs' request to deliver notice by text message … is denied"); *Park*, 2019 WL 2205715, at *7 ("the Court will not authorize distribution via text message"); *Hotaranu v. Star Nissan, Inc*., No. 16 CV 5320 (KAM) (RML), 2017 WL 1390808, at *6 (E.D.N.Y. Apr. 12, 2017)(same); *Tanski v. Avalonbay Cmty*., No. 15 CV 6260 (AKT), 2017 WL 10858910, at *20-21 (E.D.N.Y. Mar. 31, 2017)(same).

NYCB also objects to Plaintiffs' proposal to post the notice and consent forms in its branches and on a "stand-alone website." (Plf. Mot. at 3.) While use of stand-alone websites is

commonplace with settlements, particularly in the Rule 23 context, Plaintiffs fail to explain why use of a website to disseminate notice and enable individuals to join the lawsuit is necessary here. Properly signed opt-in consent forms that were delivered by mail and email can be returned via mail and email – there is no need for resorting to a website that can be accessed by anyone to enable anyone who might happen upon the website to affix an electronic signature to a consent form and join the lawsuit. Absent an explanation as to why use of a website is necessary to aid in the dissemination of notices and submission of consent forms, use of a stand-alone website would be unnecessary and improper. *See, e.g.*, *Ni v. Red Tiger Dumpling House*, No. 19 CV 3269 (GRB) (AKT), 2020 WL 7078533, at *12 (E.D.N.Y. Nov. 30, 2020) ("the Court declines to permit Plaintiff's counsel to disseminate the Notice through counsel's website," as "the Court has no basis on which to find that posting the Notice on counsel's own website would reach potential plaintiffs in a way that mail, text, and email would not"); *Chui v. Am. Yuexianggui of LI, LLC*, No. 18 CV 5091 (SJF)(AKT), 2020 WL 3618892, at *10 (E.D.N.Y. July 2, 2020)(same); *Lin v. DJ's Int'l Buffet,* No. 17 CV 4994 (JS)(AYS), 2019 WL 5842798, at *5 (E.D.N.Y. Nov. 7, 2019) (denying use of website as a means to distribute notice and collect consent forms, because "[p]osting on … websites would be overbroad and not likely to materially improve the chances of notice"); *Sharma*, 52 F.Supp.3d at 464 (denying plaintiffs' request to use website as additional medium to distribute notice to the FLSA collective).

There is also no need for a "reminder" notice (Plf. Mot. at 3) because the collective members will already be receiving notices in at least one, if not multiple, forms. Plaintiffs offer no explanation of why a reminder notice is needed here. *Islam*, 2019 WL 5198667, at *12 (denying use of reminder notice where plaintiffs "have not put forth any reason justifying the need for a reminder notice"); *Guzelgurgenli v. Prime Time Specials*, 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012)(because "Plaintiffs have not identified any reason why a reminder notice is necessary[,] ….

The Court denies the Plaintiffs' request to send a reminder notice").  In addition, a reminder notice could be perceived as an attempt to take "another bite at the apple," and interpreted as an improper encouragement by the Court to join the lawsuit or a badgering of the putative opt-in plaintiffs. *Guzelgurgenli*, 883 F. Supp. 2d at 357; *Tanski*, 2017 WL 10858910, at *20-21 (same).  Indeed, courts "have rejected reminder notices, recognizing the narrow line that divides advising potential opt-in plaintiffs of the existence of the lawsuit – and encouraging participation." *Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2012 U.S. Dist. LEXIS 181073, at *13-14 (S.D. Ohio Dec. 21, 2012)(citation omitted).  Accordingly, if the Court determines that notice should be issued to some form of a collective, the notice should be disseminated by mail and email with no text message notice, website posting, branch posting, or reminder notice.

### C.     The Collective Definition Must be Refined and Clarified

The collective definition in the proposed notices must be revised to reflect the parameters set by the Court in any conditional certification order it may issue.  In addition, the collective definition must be defined in terms of ABMs and BOCs, and not incorporate vague phrases, such as "employees in similar job positions with different titles." (Doc. 31-2 at 2, 8).  Plaintiff Lopez was employed as an ABM.  (Complaint at ¶ 6).  Opt-In Plaintiff Samantha Gomez was employed as a BOC.  (Gomez Decl. at ¶¶ 2-3).  Opt-In Plaintiff Jamie Metwally was employed as a BOC, then later as an ABM.  (Metwally Decl. at ¶¶ 3-4).  Plaintiffs have not identified anyone who was employed during the relevant period "in similar job positions with different titles," and Plaintiffs have yet to identify what, if any, such positions exist.  Therefore, to be accurate and informative, the notices should define the collective clearly, without reference to "employees in similar job positions with different titles."  Refining the definition of the collective in this manner will minimize the risks of future disputes concerning the production of records for any collective the

Court may certify.  NYCB cannot be called upon to speculate as to the meaning of the phrase "similar job positions with different titles" in compiling such information.

**D.      The Notices Fail to Inform Potential Opt-In Plaintiffs of Their Litigation Obligations**

Plaintiffs' proposed notices also fail to inform putative collective members that, by joining this lawsuit, they may be subject to certain litigation obligations.  "To help potential opt-in plaintiffs make an informed decision about whether to join" an FLSA action, courts within this Circuit "routinely approve" the inclusion of such language. *Guo v. Tommy's Sushi*, No. 14 Civ. 3964 (PAE), 2014 WL 5314822, at *5 (S.D.N.Y. Oct. 16, 2014).  Specifically, the "Ask To Be Included" summary in the mail and e-mail notices, along with the language of Section 6 of both notices, should be revised to include language explaining that opt-in plaintiffs "may be called upon to testify, appear for depositions, and respond to discovery requests."  *Sexton v. Franklin First Fin*., No. 08 CV 4950 (JFB)(ARL), 2009 WL 1706535, at *12 (E.D.N.Y. June 16, 2009); *see also Siewmungal v. Nelson Mgmt. Group*, No. 11 CV 5018 (BMC), 2012 WL 715973, at *4 (E.D.N.Y. Mar. 3, 2012)(same); *Avila v. Northort Car Wash*, 774 F. Supp. 2d 450, 456-57 (E.D.N.Y. 2011)(same).

**E.      The Notices Should Include Defense Counsel's Contact Information**

To ensure neutrality and accuracy, the Court should also require the parties to revise the notices to include contact information for NYCB's counsel, as well as Plaintiffs' counsel.  *Desir v. NYU Langone Health Sys*., No. 19 Civ. 8144 (JPC)(SLC), 2020 WL 7631434, at *6 (S.D.N.Y. Oct. 19, 2020)("Courts in this Circuit have generally concluded that the contact information of defendants' counsel is appropriate for inclusion in a notice of collective action")(quotation omitted); *Zhongle Chen v Kicho Corp.*, No. 18 Civ. 7412 (PMH) (LMS), 2020 WL 1900582, at *10 (S.D.N.Y. Apr. 17, 2020)("The Court agrees with other 'courts in this Circuit, which have

generally concluded' that the contact information of Defendants' counsel 'is appropriate for inclusion in a notice of collective action'").[5]

### F. The Notices and Consent Forms Must Inform Potential Opt-In Plaintiffs That They Have A Right To Appear *Pro Se* or Through Separate Counsel

Plaintiffs' proposed notices and accompanying consent forms fail to inform potential opt-in plaintiffs of their right to appear *pro se* or through counsel of their own choosing.  In fact, Plaintiffs' proposed notices state the opposite, suggesting to each potential opt-in plaintiff that by "join[ing] this lawsuit, he or she would have to "agree to have . . . Plaintiffs' Counsel . . . act as your representative and make decisions on your behalf concerning the case" (Doc. 31-2 at 4, 10). Similarly, Plaintiffs' proposed consent forms would obligate each opt-in plaintiff to "designate" Plaintiffs' Counsel "to represent me and make decisions on my behalf concerning the litigation and any settlement" (*Id.* at 7, 13).  This is patently inappropriate. *Garcia v. Pancho Villa's of Huntington Village*, 678 F. Supp. 2d 89, 95 (E.D.N.Y. 2010)(in FLSA collective actions, "proposed plaintiffs are not required to accept plaintiffs' counsel as their own," and any notice must "make that clear").[6]  As such, the notice should indicate in a neutral manner that putative

---

[5] *See also*, *e.g.*, *Geng v. Shu Han Ju Rest. II Corp.*, No. 18 Civ. 12220 (PAE) (RWL), 2019 WL 4493429, at *19 (S.D.N.Y. Sept. 9, 2019)(defense counsel contact information should be included in a notice "to avoid even the appearance of judicial endorsement of the merits of the action")(quotation omitted); *Castillo v. Perfume Worldwide*, No. 17 CV 2972 (JS) (AKT), 2018 WL 1581975, at *14 (E.D.N.Y. Mar. 30, 2018)(finding it "reasonable" to include defense counsel's "name and contact information" in FLSA collective notice; *Cano v. Four M Food Corp.*, No. 08 CV 3005 (JFB) (AKT), 2009 WL 5710143, at *11 (E.D.N.Y. Feb. 3, 2009)(concluding "both counsel's contact information should be included in the notice" to ensure it is "accurate and informative").

[6] *See also*, *e.g.*, *Islam v. LX Ave. Bagels*, No. 18 Civ. 4895 (RA), 2019 WL 5198667, at *10 (S.D.N.Y. Sept. 30, 2019)(noting a collective notice and consent form must "clearly provide[] the option for a plaintiff to choose another lawyer or to participate without a lawyer"); *Serebryakov v. Golden Touch Transp.*, 181 F.Supp.3d 169, 177 (E.D.N.Y. 2016)(ordering revision of collective notice which misleadingly "suggest[ed] that opt-in plaintiffs do not have other options in securing representation" apart from being represented by named plaintiffs' counsel); *Martin v. Sprint/United Mgmt. Co.*, No. 15 Civ. 5237, 2016 WL 30334, at *18 (S.D.N.Y. Jan. 4,

collective members can choose their own counsel. *See Diaz v. S&H Bondi's Dep't Store, Inc.*, No. 10 Civ. 7676 (PGG), 2012 WL 137460, at *7 (S.D.N.Y. Jan. 18, 2012).

In addition, Plaintiffs' proposed mail and e-mail notices also purport to require individuals who may opt-in to the lawsuit to designate Plaintiffs as their "representatives" for purposes of, *inter alia*, "mak[ing] decisions on your behalf concerning the case, including approving any settlement" (Docket Entry No. 31-2 at 4, 10). This too is patently improper. Collective actions, unlike Rule 23 class actions, involve a group "of *individual* plaintiffs with *individual* cases," who are not "represented" by the named plaintiffs. *Pettenato*, 425 F.Supp.3d at 279 (emphasis in original, quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018)); *accord Marichal v. Attending Home Care Servs.*, 432 F.Supp.3d 271, 278 (E.D.N.Y. 2020)("although the original plaintiffs in a collective action may pursue the suit on a representative basis, each FLSA claimant has the right to be present in court to advance his or her own claim"). Therefore, there is no justification for demanding that potential opt-in plaintiffs designate Plaintiffs or Plaintiffs' Counsel as their "representatives."

## V.   **CONCLUSION**

Plaintiffs' claims are solely based on their contention that ABMs and BOCs are not paid for opening procedures, interrupted meal periods, and closing procedures. In support of their claims, Plaintiffs offer nothing more than anecdotal evidence from three former employees regarding their own experiences at five branches (out of more than 130 New York branches) based on the actions of local management. They, however, offer absolutely no evidence showing that ABMs and BOCs throughout New York are subject to a common unlawful policy of not being paid for opening and closing procedures and experiencing interrupted meal periods. Indeed, the

---

2016)("Courts frequently approve language clarifying that opt-in plaintiffs are not required to accept plaintiffs' counsel as their own")(internal quotation omitted).

evidence presented by NYCB demonstrates that ABMs and BOCs at other branch locations are compensated for performing these duties, consistent with Company policy.  Lacking evidence of a common, unlawful policy, Plaintiffs' motion for conditional certification of a collective consisting of approximately 490 current and former ABMs and BOCs throughout New York must be denied.

Date: March 12, 2021
     New York, New York

          /s/

Timothy S. Anderson
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, Ohio 44114
(216) 696.7600

Gary Moy
LITTLER MENDELSON, P.C.
900 Third Avenue, 8th Floor
New York, New York 10022
(212) 583.9600

*Attorneys for Defendants*